. May it please the court. Scott Perwin for Walgreen and Kroger. I'd like to reserve four minutes if I could. The district court committed four legal errors in reaching the decision that is under review. It applied the wrong law. It applied the wrong rule of law. It misinterpreted the distribution agreements that are at issue. And it erroneously concluded that the defendants here, Johnson&Johnson and Janssen Biotech, are parties to distribution agreements that the agreements expressly say they're not parties to. I want to address these errors in reverse order, starting with the last one. Yeah. Thank you. Because that's what I was going to ask you to do. So if we decide that the case is over and the other issues are irrelevant? The contracting party issue, that would be sufficient to reverse, because clearly if they are not parties to the contract, then under New Jersey law they have no standing to enforce the contracts. That's certainly clear. When you say that would be sufficient, that means anything we would say about the other issues would be dicta? No, Your Honor. I think you could have alternative holdings. I don't think the court needs to limit the ruling to that one narrow issue. These issues have come up before, as Your Honor knows from Hardy Drugs, how to interpret these distribution agreements, the anti-assignment language, what's the appropriate rule of federal common law. I don't believe the court would have to stop. If the court wants to address the other issues, it certainly could. But it is sufficient because Section 4.8 says the defendants have no standing to enforce this contract. They have no rights under it. They are not entitled to any remedies under the agreement. The district court obviously gave them a remedy and validated assignments. And second, since the defendants are not contracting parties, the wholesalers have no rights under the agreement against defendants. Their only rights are against JOM, which is the entity that entered into the contract. So they didn't assign any rights against JOM to my clients. So that's the first problem with the judge's ruling. The court also misinterpreted the distribution agreements. The anti-assignment language in Section 4.4 applies only to, quote, the agreement, close quote, and to, quote, rights and obligations, close quote, under the agreement. Statutory antitrust claims are not an agreement, and they're not rights under an agreement. They're rights that were created by Congress when they passed the Clayton Act in 1914. Okay, so rights under the agreement are determined by New Jersey law? Rights under the agreement are determined by New Jersey law. That's correct. This is something different. No, we're interpreting the agreement, and we don't dispute that it's governed by New Jersey law. The agreement in Harding Drug was governed by Pennsylvania law. Lots of cases involving these kinds of agreements. I'm looking for the transition to federal common law. Right, that's going to be my next point. I'm happy to talk about that, but our position is that aside from federal common law, the district court got it wrong when they interpreted the agreement. The language of the anti-assignment clause is narrow. New Jersey follows Section 322 of the restatement, which interprets these kinds of provisions narrowly. So are you saying that New Jersey law governs everything except the anti-assignment provision, and that the anti-assignment provision is governed by federal common law? No, no, no, Judge. We agree that the interpretation of the anti-assignment provision is governed by New Jersey law. The validity of my client's assignments is governed by federal common law. Help me understand the distinction you're drawing. Well, there's two different documents. One is the contract, which has a choice of law provision in it, and just like the contract in Hardin Drug had a Pennsylvania choice of law provision. And then there's these assignments, which are separate documents that were given to my clients by their wholesalers, and the court has held three times at least that the validity of an assignment of a federal antitrust claim, which is what we're ultimately talking about, is governed by federal common law. So focus on the initial contract, the one between the wholesalers and your client. Excuse me, between the wholesalers and JOM. Yes. The anti-assignment clause in that contract, that you're saying is governed by New Jersey law? Yes. Okay. Just like the one in Hardin Drug was governed by Pennsylvania law. That's consistent with Gulfstream and Wallach and others, because why? Well, because they're talking about a different document. They're talking about an assignment. The conveyance of the claim from the original owner to the transferee, the assignee, is a different thing than the contract itself, which is a distribution contract. It's a typical commercial contract, has a choice of law clause. There's hundreds of them. What if New Jersey law said anti-assignment clauses for antitrust claims have to be, are always unlawful? You can't assign antitrust claims. Well, that would probably be preempted. But I think still in the first instance it would be, it's a matter of New Jersey law. So federal common law is a backstop against state law. Well, it's two things. I mean, I think if a state were to pass a statute that said you can't assign federal antitrust claims, that would clearly be preempted by the Sherman Act and the Clayton Act. Second, even if the state doesn't do that, if there's a contract entered into, a commercial contract entered into by two parties that have agreed to apply New Jersey law, and somewhere in that contract it says you can't assign X, Y, or Z, then the interpretation of that anti-assignment contract is a matter of state law. And either it's the law that's chosen in the contract, or you go through a choice of law analysis and figure out what law applies to that. But that, whether or not the assignment itself is a contract, right? In a sense, yeah. It's a conveyance. It's a conveyance. It's a contract. But it's not governed by New Jersey law. It is not. It is governed, this court has made it perfectly clear, that whether that's valid and how it's interpreted are matters of federal common law. So if we're right and there was no prohibition on assigning these claims under the contract, then there's no prohibition, and obviously they can't be invalid because they're not even prohibited. Even if they are prohibited, we've argued at length in our brief that the appropriate rule of federal common law, based on the rationales for choosing federal common law in the first place, is to say that those assignments remain valid even if they're prohibited by the contract. The person who is aggrieved by the breach can file a claim for damages against the person who assigned it unlawfully, but it doesn't invalidate the assignment. Well, then let's address the language first of the distributorship agreement. Because if we do that and find that they're not included within it, game, set, match. That's right. And, Your Honor, the court has come very close to doing that in the harder drug case where the district court ruled that the assignments were invalid because they were prohibited, ruled under 12B1, the court said that's not the way to do it, 12B6 issue, and then the court said, but if this issue comes up again on remand, you should be aware that there's a very serious argument to the contrary of what you ruled. Footnote 17. There you go. Footnote 17. Yes. I believe that's right. And although we're not saying that the court decided the issue at that point, it clearly instructed the district court that it was a serious issue, and we believe that that was correct. The language, as I said a minute ago, statutory antitrust claims are not agreements. They're not rights under an agreement. They're rights that were created by Congress. And this language is narrow. It's not an alternative dispute resolution like an arbitration clause. It doesn't say rise out of or in relation to. It doesn't talk about claims at all. The mediation provision in this agreement does say. I don't recall. Rise out of or relation to. There is an arbitration provision, yes, which the court ruled on in the Remicade case. But that's not at issue here. And that has much broader language. So where did the district court get it wrong? Well, they got it wrong in the four places that I said at the beginning. But I mean. They got it wrong because they. So he read the language too liberally. He didn't focus on the rights under the contract. That is correct. That's one thing. They also applied. The court applied state law instead of federal common law to the validity of the assignment. The court was wrong in holding that these companies defendants are parties. And the court misinterpreted the distribution agreements to make them much broader than they actually are. So unless the court has questions, I will reserve my time. Well, I actually do have one question. There's a. Your assertion that even if we were under state law here, the remedy would be an action for breach. That couldn't be. I mean, how would that work? Because you would have a circumstance where the alleged wrongdoer would assuming the system work the way one hopes it would. That is, it would that wrongdoer would be reimbursed for the breach and would not suffer the consequences of the antitrust violation. The consequences of the antitrust violation would fall on the wholesaler. No, no. There's a contract. We're assuming there's a contract between JOM and the wholesale that says you want to sign. Let's suppose it said you want to sign antitrust claims. So we get put the interpretation to one side. And then they do it. They sign an antitrust claim to my client who then sues the violator. The violator would have a claim for breach of contract against the wholesaler for doing something they weren't supposed to do. And if they could prove damages. I think that's what I just said. How is that consistent with antitrust policy then for the wrongdoer to get off essentially scot-free and have the wholesaler bear the burden of that? And how would that incent wholesalers to sign their claims? No, I don't think the violator would get off free. They would have to prove that there was some damage caused by assigning the claim. In other words, our clients would sue them as opposed to the wholesaler suing them. And then if our clients have better lawyers and get more money, they would say, well, if you hadn't assigned the claim, we would have saved some money. Here's what I'm trying to think through. Under your reasoning, Walgreen's reasoning, even if the state law were controlling and it were clear that you couldn't assign these claims, the remedy would be for JOM to sue the wholesaler. That's your theory, right? For a breach of contract. For a breach of contract. And the consequence of the breach, the damage would be that Walgreen wins its suit. Assume it won, got everything it wanted, treble damages. Then JOM sues the wholesaler and says, you assigned this in breach of your contract to me. I've suffered X hundreds of millions of dollars in damages. You pay me for the breach. Only if it proves that the assignment actually caused it to pay more because the wholesaler would have a claim. And what typically happens in these cases is the wholesaler is part of a class action against the violator. And they would have to show that they paid more because of the assignment than they would have paid. Their liability was increased by the assignment. And in most cases, they would have to show that we actually got more money than we would have if the claims had remained with the wholesalers. Well, if they remained with the wholesaler. Yeah. Typically, these are litigated market-wide. Okay. Thank you, Your Honor. Thank you, Mr. Perlman. May it please the Court. William Cavanaugh on behalf of Johnson & Johnson and Janssen Biotech. The state plaintiffs concede that state law, New Jersey law, applies to distribution agreement. And that's consistent with the holding in Hardick. Under New Jersey state law, you look to the manifest intention of the parties. Here, the plain language of the anti-assignment provisions states that they do not have the power to grant an assignment. To distinguish it from the line of cases that Your Honor was just discussing where you're dealing with the right of assignment. Under the restatement, that might lead to a damage claim. But here, under the restatement and New Jersey law. Get specific, Mr. Cavanaugh, about what exactly the exact language of the assignment, the anti-assignment provision. It's rights under the agreement. Okay. This agreement or any of its rights or obligations under this agreement. Yeah. Okay. So how are antitrust rights rights under the agreement? Because the injury here comes directly from the contract. The antitrust injury comes from the contract. That's a but-for causation. Are antitrust rights created by the contract? Antitrust rights are not created by the contract. But the injury here and the right to bring the cause of action only exists if there is an antitrust injury. And the injury comes from the contract. That's a but-for causation. If there weren't for the contract, then there wouldn't be injury. But how is an antitrust claim, cause of action, a right or an obligation under the agreement? Because the cause of action Where is it listed in the agreement as a right or an obligation? It is not. But that's really no different than in Rochester drug. When the trial court had found that the antitrust claims did not arise out of the contract. This court reversed that, finding that they were Arise out of is different from a right or obligation under. If it arises out or relates to, that's a broader inquiry. But when it says rights under the agreement, we have to look at the agreement And determine within the four corners, what are the rights and obligations? There's a right to a distributorship payment. There's a right to this. There's a right to that. I submit, Your Honor, that the term arising under and a right under the agreement are frankly the same. The question is, are they Was heartache drug just wrong? I'm sorry. Heartache drug just wrong in footnote 17. I think footnote 17 raised a question that frankly in cases like American Orthopedic decided by this court And City of Hope, which was cited affirmatively by this court, dealt with the issue of a right under ERISA. Again, a federal statute designed to protect individuals. But it was found that an anti-assignment provision was enforceable to prohibit assignment of an ERISA claim for medical benefits. The medical benefits provided under that contract. So it's the result is the same. I think heartache raised the question that has that frankly has been answered. It was it was answered in the context of ERISA. And Anna, a question about whether rights arise under the antitrust statutes was answered in a case about ERISA. I think the principles are the same, Your Honor, that in both instances you have a federal statute that frankly in the case of ERISA Provide for actual preemption of state law. There is no preemption under the Sherman Act. As a matter of fact, as as this panel knows, there is a wealth of antitrust laws under state law that many times conflict with the Sherman Act. But ERISA cause of actions are based on performance or non-performance under the underlying contract. But antitrust causes of action are not. They're based upon independent statutory provisions. Well, again, no, it's based upon your rights under ERISA to receive those benefits. And if you don't receive them, you have the right under the federal statute to bring a claim. There are rights under ERISA only in the sense that if there are contractual rights, ERISA governs how those contractual rights are vindicated. They're not rights that arise from ERISA. ERISA doesn't establish the benefits. The contracts establish the benefits. Right. And here the contract provides that the plaintiffs will pay a whack. And their allegation in their allegation in this case is that the that price that's reflected was a super competitive price in violation of antitrust laws. That's that's with due respect. That's not really responsive. And I'm probably because my question is poorly framed. So please give me another opportunity. You're saying that American Orthopedic answers the question that was raised, as you put it, in footnote 17 in Hardick, because in American Orthopedic, we said that rights under ERISA were to be determined by federal law. And that, well, excuse me, the rights under ERISA were could be rights that the contract at issue dealt with. I understood what you were saying. Is there not a difference between saying what was said in American Orthopedic, which is rights under ERISA? And what's being said in this case, which is an argument about rights under the contract? The operative question that before us is what are the rights under the contract and whether that is different from rights arising from antitrust statutes? I think where the two are, to use this court's language in Rochester, where they are undeniably intertwined, is that the contract provides for them to pay a price that is lawfully set by Janssen, because Janssen has agreed not to violate any laws. That is an express provision in that contract. And their theory, the plaintiff's theory in this case, is that the price they paid was a super competitive price in violation of the Sherman Act. So it invokes two provisions in the contract. One is the provision for WACC, and the second is Janssen shall not violate the law. All right. If my colleagues will permit me, I would like you to answer the question which Mr. Perlin started with, the argument that you guys have no right to be here at all. You're not in the contract. The fact that your name gets mentioned somewhere in the contract doesn't matter, and it goes beyond his argument at the podium, but maybe you'd address the assertion that the whole argument that there's an agency relationship here which makes this all well and proper, you know, they assert that that's nonsense. It doesn't work. I understand, Your Honor. To be clear, we are not relying on Section 4.8 and arguing that somehow Janssen and J&J are third-party beneficiaries here. The contract, and we cite each of these provisions in our brief, JOM is an authorized distributor of products, a defined term which includes Remicade, with authority delegated by the manufacturers, and Janssen Biotech is identified as a manufacturer in Schedule C. Now, I understand you say 4.8 is not what you're relying on to be a third-party beneficiary, but 4.8 says no one other than JOM and the wholesaler has any rights or is entitled to any remedies under this agreement. That's the quote from 4.8. How do you get, in the face of 4.8, how do you say, even though it says that, we have rights? We have rights. Is the way you get there by saying there's no distinction between us and JOM? We are JOM, JOM is us. We are a disclosed principle, and for that you look at Accepting that. Disclosed principles, the disclosed principle doctrine would not overcome a direct statement that the disclosed principle has no rights, would it? But it doesn't say that, Your Honor. It's a hypothetical. Assume a provision that said, and the disclosed principle, when we say nobody has any rights, we mean them too. If it expressly said that, but here it doesn't. Here it says Not enough to say no one other than JOM. Not if you say third-party beneficiaries. We are Third-party beneficiaries out of it. You've agreed and we'll all agree, third-party beneficiary has nothing to do with it. How do you get from no one other than JOM, and the wholesaler has any rights or is entitled to any remedies under this agreement, to we have rights, unless you're saying we're no different from JOM. JOM and we are the same. They are our authorized agent. And as such, we are a disclosed principle under this agreement, and hence have rights under this agreement. 4.8 is intended to deal with third-party beneficiaries. It doesn't say third-party beneficiaries. It says no one has any rights. But the title of it is third-party beneficiaries, Your Honor. Yeah, regardless of what the title says, I'm looking at what it says. What it says is no one has any rights. But you have to read. I would submit you need to read the entire provision, which says third-party beneficiaries. And throughout the agreement, it refers to disclosed principles because the authority delegated by the manufacturers to designate additional distributors on their behalf for distribution of the products, company and its affiliates desire to retain distributors. Does 4.8 at a minimum render it ambiguous whether or not Janssen and J&J have a standing here? I don't believe so, Your Honor, when you look at the totality of the agreement. As a matter of law, in the face of a statement that no one's got any rights, it's not even ambiguous that you clearly have rights. As a matter of law, you clearly have rights. I believe so, Your Honor, given the third-party beneficiary designation of 4.8 and given the number of times throughout the agreement as a whole the disclosed principle of Janssen Biotech is referenced. What is the meaning in Section 4.25 that each party represents and warrants that it is authorized to execute this agreement and has authority to legally bind itself? That is, JOM was given that authority by the manufacturers, as the agreement makes clear. Okay. It says they're authorized by the manufacturers. Does it mean they have the right to act independently? I'm representing to you, I have the right to do this. I can enter into this contract. I'm your contracting counterparty. As to the terms of that agreement, yes. Do they have, does JOM have rights beyond the agreement? No. If you think, right, if you enter into a contract with someone and they say, I'm your counterparty, nobody else has any rights under this, I'm independently author, I've got authorization to enter into this and legally authorize the bind, Is the counterparty entitled to believe that that is the counterparty and there are no other parties? Or is that counterparty supposed to believe, because somebody might be mentioned somewhere else in the document, I have another counterparty? I think the counterparty is entitled to believe that where the agency relationship is made clear, that the agent has the power to bind the principal. Because that's precisely what happened here. Because as it says in the agreement, they are authorized on behalf of the manufacturers. Authorized to do what? Authorized to enter into this agreement to sign up the wholesalers as additional distributors. Does this give you the right to sort of have your cake and eat it too? You can have JOM on the hook with the wholesaler and not have responsibilities, but when you want to do something, you can come in and say, wait a second, we were disclosed, so we get all the benefits of this obligation, of this contract. No, I don't believe so, Your Honor. For example, 4.25, which references ADR and the choice of law provision, states that any dispute that involves a parent or an affiliate, Could the wholesaler come in and be suing you under this contract? Could the wholesaler come to court and say, I'm suing J&J and Johnson, and Janssen, because they were disclosed principals here, they're on the hook. If that were to happen, would we not see, just like that, a 12B6 motion saying, we're not even a part of that contract? No, I don't believe so, Your Honor, because of the authorization language in there. I don't have any other questions. All right, thank you very much, Mr. Cavanaugh. Mr. Baldwin? Just briefly, Your Honor, Section 4.8, as Your Honor realizes, expressly excludes disclosed principals. What does the third-party beneficiary title mean at the top of it, Mr. Cavanaugh? It does say that, and it clearly means there are no third-party beneficiaries, but it also identifies the only two parties to the contract, because parties to a contract can enforce the contract. It says defendants can't enforce the contract, therefore they can't be parties. So that takes care, and you can't get around it by saying, well, JOM and Johnson & Johnson are the same thing, because JOM is a distributor for Johnson & Johnson. They have a contract between them. We know that because there's a declaration in the record that says they only do these kinds of relationships by contract. So if there's a contract between two companies, they can't be the same company. On the ERISA point, as the Court realizes, ERISA claims are contractual in nature. They're based on an insurance policy, a plan, an agreement between parties that federal law protects, but they're different than antitrust claims. And in addition, in the American Orthopedic case, the language of the non-assignment clause was broader than it is here. It just talked about medical benefits, right to medical benefits. It didn't say under a contract. So that is another distinction. And finally, Judge, the contract doesn't say that the anti-assignment provision applies to any claim arising from an injury that may relate to or arise out of a contract. It just says agreement and rights and obligations under the agreement. Nothing to do with the source of the injury. Thank you. All right. Thank you, counsel. Got the matter under advisement. Appreciate your arguments today.